UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


THERESA M. K.[1],

                              Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                              Defendant.

Case No.: 1:18-cv-01221-MK

OPINION AND ORDER


**KASUBHAI, Magistrate Judge:**

Plaintiff Theresa M. K. brings this action for judicial review of the Commissioner of

Social Security's ("Commissioner's") decision denying her application for Disability Insurance

Benefits under the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c). Both parties consent to jurisdiction by a U.S. Magistrate Judge.

For the reasons discussed below, the Court remands for the immediate calculation and

award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the
non-governmental parties in this case.

## BACKGROUND

Plaintiff applied for Disability Insurance Benefits on December 23, 2013, alleging disability beginning April 22, 2013. Tr. 53. Her claims were initially denied, and Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Steven A. De Mondbreum on May 1, 2017. *Id.* During the hearing, Plaintiff's attorney amended the onset date of disability to June 1, 2014 ("AOD"). Tr. 53, 80-81. The ALJ denied Plaintiff's application in a written decision dated June 22, 2017. *See* Tr. 53-65. Plaintiff sought review from the Appeals Council and submitted new evidence. Pl.'s Br. 18 (ECF No. 21); *see* Tr. 2, 16-49. The Appeals Council declined to include the newly submitted evidence into the record and denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of the decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

# DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. *Id.* If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

In the present case, the ALJ found that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended onset date of June 1, 2014. Tr. 56. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease (DDD) status post lumbar surgery (October 12, 2015), depressive disorder, history of posttraumatic stress disorder (PTSD), history of attention deficit hyperactivity disorder (ADHD), and peripheral neuropathy. *Id.* While noting that the record also references other conditions including fine tremor, the ALJ found that they do not constitute "severe" impairments. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 56-58.

Prior to step four, the ALJ determined that Plaintiff retained residual functional capacity ("RFC") that allowed her to perform light work. Tr. 58. Specifically, the ALJ found that Plaintiff can

> lift/carry 20 pounds occasionally and 10 pounds frequently, sit for about 6/8 hours total, and stand/walk for about 6/8 hours total, except the claimant can frequently balance, occasionally climb ramps and stairs but never ladder, ropes or scaffolds, occasionally kneel, crouch, and stoop/bend but never crawl, should have no exposure whatsoever to vibration and hazards such as dangerous machinery and unprotected heights, and can understand, remember, and carry out short, simple, routine job instructions with a DOT GED reasoning level of 2 or less, consistent with unskilled work.

Tr. 58.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 63. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and RFC, such as garment sorter, bottle line attendant, and routing clerk. Tr. 64.

Plaintiff seeks review by this Court contending that (1) the ALJ committed harmful error by finding Plaintiff's weak grip strength and tremors did not meet step two; (2) the Appeals Council erred in reviewing but not considering the new evidence Plaintiff submitted to the Appeals Council; (3) the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective complaints; and (4) the ALJ did not provide legitimate germane reasons to reject the lay witness testimony of Plaintiff's husband.

Plaintiff requests this case to be remanded with specific direction for the ALJ to reconsider (1) Plaintiff's hand tremors, (2) the diagnosis of Parkinson's disease, (3) Plaintiff's complaints in light of her retroactive diagnosis, and (4) given the limitations whether or not Plaintiff could sustain jobs in the national economy.

Plaintiff argues that the ALJ based his finding of non-severity at step two of Plaintiff's tremors largely on his discrediting of Plaintiff's testimony and his finding that her tremors had

not worsened. Pl.'s Br. 15 (ECF No. 21).  The Court therefore first addresses the issue of subjective testimony.

## I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).  A general assertion the claimant is not credible is insufficient; instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ discredited Plaintiff's subjective complaints based on several stated reasons: (1) Plaintiff "was actually working more even though she [claimed that] she was in more pain, Tr. 61; (2) Plaintiff had earnings in the third and fourth quarters of 2014, and she earned more money in 2014 "because she took on extra work," Tr. 61; (3) Plaintiff generally received conservative treatment, Tr. 59, 61; (4) Plaintiff did not receive physical therapy for her back pain as recommended by doctors, Tr. 59; (5) Plaintiff's back surgery and procedures "appeared to be successful," Tr. 60; (6) Plaintiff's "depression was considered under control in spite of some stress" in 2017, Tr. 60; and (7) Plaintiff's "daily activities are quite involved," including watching her grandson, home tasks and crocheting, Tr. 60-61.

### A. Pre-AOD Work History and Post-AOD Earning

Where the claimant's lengthy history of impairment did not prevent her from working, the ALJ may discredit the claimant's subjective complaints. *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (finding that the claimant's back problems had remained constant for a number of years and had not prevented her from working, which are substantial evidence to support the decision that the claimant's back problems did not render her disabled). An ALJ may also find the claimant's subjective complaints not credible if the claimant left a job for reasons unrelated to the impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming the ALJ's finding that the claimant's subjective complaints not credible because, among other factors, the claimant left his job because he was laid off, rather than because he was injured).

Here, Plaintiff first reported low back pain of an 8/10 pain scale on December 9, 2013. Tr. 415.  Unlike the claimant in *Gregory* who was able to work despite constant back pain for "a number of years," Plaintiff left her school bus driver job about six months later. Tr. 80.  She did not have a lengthy history of low back pain when she left her job.  Plaintiff "attributes the worsening [of the low back pain] to starting to drive the bus in September which she does during the school year.  She states that every school year the pain becomes worse as the school year goes on." Tr. 487.  Plaintiff put her name on the list to be on call as an education assistant. Tr. 90.  She testified at the hearing that as an education assistant she would work on the playground or go from desk to desk to help students. Tr. 88-89.  The duty of an education assistant does not require Plaintiff to sit at all times like a school bus driver. *See id.*

As to the ALJ's discrediting of Plaintiff's subjective complaints because she was working more while she was in more pain, the ALJ failed to consider or develop the pertinent records for possible explanations why Plaintiff worked more.  Since Plaintiff attributes the worsening of her low back pain to driving the school bus, she may have taken on the education assistant duty in order to alleviate her low back pain from driving the bus.  As such, the ALJ did not provide specific, clear and convincing reasons to discredit Plaintiff's subjective complaints based on her extra work.

Regarding Plaintiff's earnings in the third and fourth quarters of 2014, Plaintiff testified that she tried to perform three insurance jobs after leaving the school bus driver job but was unable to meet the jobs' demands. Tr. 102-04.  She couldn't move her hands or function on the same level as what was expected of her. Tr. 102.  She "was let go each time." *Id.*  Plaintiff's earnings after the school district job totaled $4,486 in 2014. *See* Tr. 255 (Plaintiff earned $675, $2,733, and $1,078 respectively from three employers).  The record does not include specific job

descriptions for these three jobs from which any reasonable conclusions could be drawn of what the work Plaintiff was actually doing. For example, the records do not specify Plaintiff's hourly wage, weekly hours, how long she was employed with each employer, and what the job duties were. Therefore, the ALJ's rejection of Plaintiff's subjective statements based on her earnings after the AOD lacks specific, clear and convincing reasons.

**B. Treatment**

Treatment received by a claimant is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

a. Conservative Treatment

An ALJ may discredit a claimant's pain testimony based on a history of conservative treatment. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that the ALJ provided clear and convincing reasons to properly decline to rely on the claimant's testimony and noting that the doctor prescribed only "conservative treatment" which suggested a lower level of both pain and functional limitation).

The ALJ noted "conservative treatment" three times in his decision. He first found that "[c]onservative treatment was recommended" while referring to Plaintiff's low back pain symptoms in February 2014. Tr. 59. The ALJ then found that "the record reveals [that Plaintiff] has received general conservative and routine treatment" because "a neurosurgeon did not think [Plaintiff] was a good candidate for surgery." Tr. 61. Dr. Matthew Miller, the neurosurgeon who did not think Plaintiff was a good candidate for surgery, examined Plaintiff and rendered his opinion on April 30, 2014. Tr. 491-92. These conservative treatments pre-date Plaintiff's amended onset date and do not conflict with Plaintiff's symptoms after the amended onset date. Plaintiff received conservative treatment a few months after the low back pain began. As a result

of Plaintiff's constant pain that continued for more than a year after the amended onset date, Plaintiff underwent a low back surgery and additional procedures in October 2015. Tr. 532.

The ALJ again noted "conservative treatment" "[w]hile [Plaintiff] claimed in February 2015 that her pain was again radiating with numbness, tingling, and pins and needles sensation down both legs, …" citing "Ex. 15F/6-9, 10-11, 14[.]" Tr. 61. However, the records cited are dated March 7, 2017, when Plaintiff had already received aggressive treatments in October 2015, such as an invasive lumbar spine surgery and additional operations, including permanent denervation. Tr. 838.

The conservative treatments are consistent with Plaintiff's subjective complaints. The ALJ's reasoning with respect to "conservative treatments" is misplaced and does not provide specific, clear and convincing reasons to discredit Plaintiff's subjective complaints.

b. Treatment Non-Compliance

"[I]f the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons for this failure," the [claimant]'s statements may be less credible. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing SSR 96-7p). "Moreover, a claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Where reasons for non-compliance are provided but no medical evidence supports that the claimant's non-compliance was "attributable to her mental impairment rather than her own personal preference," it is reasonable for the ALJ to conclude that the level or frequency of treatment was inconsistent with the level of complaints. *Id.* at 1114.

Physical therapy was first recommended to Plaintiff by Dr. Miller on April 30, 2014. Tr. 492. In January 2015, Dr. Heidinger recommended physical therapy again. Tr. 352. The ALJ stated that "[i]t was unclear why [Plaintiff] had never received physical therapy for her low back pain. She proceeded to attend only three sessions." Tr. 59. Plaintiff explained to Nurse Practitioner Sarah Crawford on August 26, 2014 that she had not completed any physical therapy because it had been "denied by insurance" in the past. Tr. 493. After an evaluation by physical therapist Heather Huckert on January 30, 2015, Plaintiff received three physical therapy sessions in February 2015. Tr. 457-58.

A claimant's failure to receive medical treatment during the period that she had no medical insurance cannot support an adverse credibility finding. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Plaintiff initially did not receive physical therapy for the reason that her insurance denied physical therapy coverage. Tr. 493. The ALJ erred in rejecting Plaintiff's subjective complaints on the basis that she did not receive physical therapy as recommended.

c. Effective Treatment

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

*i. Treatment of Low Back Pain*

Plaintiff underwent a lumbar spine surgery on October 9, 2015. Tr. 532. During the visit on October 29, 2015, Plaintiff reported a pain scale of 6/10 on average and 10/10 being the worst she experienced. Tr. 830. Because Plaintiff's pain was still severe and debilitating, she received several procedures that day including a lumbar medial branch block and a direct visual rhizotomy that permanently transected her spinal nerves at L3, 4 and 5 of the lumbar spine. Tr. 831-41. The ALJ found that Plaintiff's surgery and procedures "appeared to be successful as she

was able to go from sitting to standing easily and walk without pain on the same day. Tr. 60, 836. The ALJ also cited the medical records of November 9, 2015 when Plaintiff reported that her pain had resolved about 50% and Dr. Lieberman noted that she was making good progress. Tr. 60, 828-29.

Plaintiff testified that her pain levels before the surgery were anywhere from seven to eight on a daily basis, and she may or may not get any relief even when lying down. Tr. 85. "There was never a day that [she] wasn't in pain." Tr. 84. Plaintiff also testified that her post-surgery pain scale is anywhere between four and seven, with six on a regular basis. Tr. 85. The pain became "more manageable" after the surgery because Plaintiff "can lay down and get relief, [whereas] before [she] couldn't." Tr. 86. After the surgery, Plaintiff "[s]ometimes … can take an extra nerve block and that'll help, sometimes it won't." Tr. 86. In contrast, "[b]efore [the surgery], if [Plaintiff] was in extreme pain, up near the eight mark, it didn't matter how many [she] took. It just wouldn't go away." Tr. 86.

Plaintiff's testimony is consistent with the medical records. The medical records show that her low back pain started at the end of 2013. Tr. 415. The pain worsened throughout 2014 and into 2015 until she had a back surgery on October 9, 2015. Tr. 409 (pain scale was 8/10 on January 13, 2014), Tr. 406 (pain scale was 9/10 on February 6, 2014), Tr. 394-95 (pain scale was 10/10 on March 10 and 11, 2014), Tr 391, 388 (pain scale was 7/10 on March 25 and April 4, 2014), Tr. 385 (pain scale was 6/10 on April 22, 2014), Tr. 378 (pain scale was 4/10 on May 19, 2014), Tr. 375 (pain scale was 5/10 on June 17, 2014), Tr. 365 (pain scale was 5/10 on September 10, 2014), Tr. 362 (pain scale was 7/10 on October 16, 2014), Tr. 353 (pain scale was 7/10 December 11, 2014), Tr. 350 (pain scale was 8/10 January 14, 2015). Except for the months of May, June and September of 2014, Plaintiff's pain scale was always above 5/10.

After the procedure on October 29, 2015, Plaintiff's pain continued despite some improvement. On November 9, 2015, Plaintiff had "radiating pain in her right hip and leg" and noted that it was painful to sit. Tr. 828. On January 9, 2017, Plaintiff "had low back pain with chronic pain just to the right of the spine at the L5-S1 level." Tr. 929. "She is occasionally having pain at the left hip, which radiates down into the left glute." Tr. 929. On March 10, 2017, Plaintiff reported that her medication "has not been helpful. She has been having left hip pain, which is the same as before [the] surgery." Tr. 922. Plaintiff received an injection during the visit which "markedly improved" the pain. Tr. 924. A week later at the follow-up visit, Plaintiff reported that the injection did not resolve all of the pain in the left leg. Tr. 919.

When Plaintiff testified that she had a 6/10 post-operation pain scale on a regular basis, the ALJ commented that "it doesn't look like you[r pain has] gone down that much, if you were a level seven to eight …" Tr. 85-86. While acknowledging Plaintiff's pain did not "go down much," the ALJ focused only on Plaintiff's immediate post-operation improvement when he rejected Plaintiff's subjective complaints. The ALJ did not offer specific, clear and convincing reasons to reject Plaintiff's testimony. Rather, the ALJ selectively relied on isolated evidence instead of considering the constellation of Plaintiff's symptoms throughout the entire record.

*ii. Treatment of Mental Impairment*

The ALJ found that Plaintiff's depression was under control in 2017 based on the treatment notes on February 22, 2015. Tr. 60, 61. According to the treatment notes, Plaintiff was seen for suicidal ideation but denied suicidal ideation once admitted. Tr. 459, 462. The treatment notes on that day also state that Plaintiff came to the emergency department for "help because [she] just [doesn't] want to live anymore." Tr. 474. At the same time, Plaintiff stated: "I don't want to hurt myself but I don't want to live either." Tr. 474. "She denies any suicidal attempts

…" Tr. 474. The notes went on to outline the procedures: "[patient] presents significant risk of harm to herself and she is unable to satisfactorily contract for safety." Tr. 479.

About two years after Plaintiff's ER visit, she told Roger Fogg, FNP, that she was "chronically depressed" but "was not feeling suicidal." Tr. 929. On March 29, 2017, Plaintiff's depression was "currently controlled" while "stress level continued to be an issue." Tr. 917.

"[W]hen the evidence is susceptible to more than one rational interpretation, [a reviewing court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. Because there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's depression was under control, the ALJ's conclusion is a rational interpretation. The Court upholds the ALJ's conclusion.

### C. Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. When considering the factor of daily activities, the Ninth Circuit has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, and only if the level of activity is inconsistent with the claimant's claimed limitations would these activities have any bearing on the claimant's credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling

environment of the workplace, where it might be impossible to periodically rest or take medication.")).

The ALJ listed multiple activities as "quite involved" to discount Plaintiff's subjective testimony. Tr. 60-61. For instance, Plaintiff "reported a history of driving a school bus, [she] had no significant problems with handling personal care, and [she is] able to prepare her own meals, make her bed, clean the bathroom, do laundry weekly, wash dishes, drive, shop in stores, and manage financial matters." Tr. 60-61. The ALJ also cited Plaintiff's report in January 2017 that she was assisting with the care of her newborn grandchild and watched the infant three days a week for a couple hours. Tr. 60-61. Regarding Plaintiff's tremors, the ALJ did not credit Plaintiff's testimony because she "reported that she was crocheting nightly, which requires good use of the hands." Tr. 60-61.

However, Plaintiff testified that she has to pace herself throughout the day. Tr. 86. She has to take a break about every 15-20 minutes every hour at a minimum. Tr. 86-87. Sometimes she has to lay down or put her feet up to alleviate the pain. Tr. 86. Plaintiff's husband completed a Function Report on February 2, 2015 which contradicts the ALJ's finding that Plaintiff had no significant problems with the activities. Tr. 292-99. Besides Plaintiff's brief testimony and her husband's testimony, the records contain no specific details of Plaintiff's daily activities[3]. For example, there is no record indicating how long it takes Plaintiff to complete each of these activities, how does she prepare a meal, or how much she can write before her tremor affects the legibility of her handwriting.

---

[3] Plaintiff's husband states in the Function Report that small projects can last all day for Plaintiff and her cleaning and laundry chores are very minimal. Tr. 294. The occupational therapy records Plaintiff submitted to the Appeals Council also contain more details of limitations to Plaintiff's daily activities caused by tremor. *E.g.*, Tr. 17. The new evidence was not before the ALJ prior to his decision.

The Ninth Circuit has noted that "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Id.* (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Here, despite Plaintiff's testimony that she takes frequent breaks, the ALJ failed to recognize the difference between activities of daily living and activities in a full-time job. The ALJ erred in discounting Plaintiff's testimony of her reported daily activities.

Plaintiff reported that she "[w]atches her infant grandson three times a week for a couple of hours." Tr. 925. When an ALJ fails to develop a record with specific details about the claimant's childcare responsibilities, childcare responsibility alone cannot constitute "substantial evidence" for rejecting disability claims. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that the ALJ erred by failing to provide specific details about claimant's childcare responsibilities in rejecting the treating physician opinion). The Commissioner argues that this case is distinguishable from *Trevizo* because "the record contained enough information about Plaintiff's childcare activities for the ALJ to make findings about it." Def.'s Br. 5 (ECF No. 24). The Commissioner does not provide any specific citation of such information in the record. *Id.* Contrary to the Commissioner's position, the records do not have sufficient information to reasonably conclude whether Plaintiff's childcare responsibility conflicts with her pain complaints. For example, there is no information in the records indicating whether Plaintiff watched her grandson alone or with someone nearby; whether Plaintiff sits or lays down with her infant grandson or holds him and walks around. The ALJ simply cited Plaintiff's childcare

activity and found that it conflicts with her pain complaints.  The ALJ's finding is not supported by substantial evidence in the record. *Trevizo*, 871 F.3d at 676.

As to Plaintiff's nightly crocheting, the ALJ omitted the word "large" when citing the record. Tr. 916 ("… she has started to use large crocheting needles and crochet nightly."). Plaintiff also reported that she can fall asleep well because of the nightly crocheting. Tr. 916. Plaintiff's use of large needles when crocheting is consistent with her tremors which causes her weak grip.  The records contain no additional information about the crocheting activity to conclude that Plaintiff is able to have "good use of the hands" found by the ALJ. Tr. 61. Specifically, there is no information as to how well Plaintiff crochets, how long she crochets each night, and whether she takes breaks.  There is no substantial evidence in the record to support the ALJ's conclusion that Plaintiff's crocheting activity is inconsistent with her tremor complaints.

## II. Lay Witness Testimony

The Code of Federal Regulations specifically provides that opinions from nonmedical sources can be provided for consideration. 20 C.F.R. §§ 404.1527(f), 404.1502(e).  "Competent lay witness testimony cannot be disregarded without comment, and … in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." *Molina*, 674 F.3d at 1114 (internal quotation marks and citations omitted).  If the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints and if the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony. *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009); 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3).

Here, the ALJ gave "limited weight overall" to the Function Report completed by Plaintiff's husband, Al K.[4], Ph.D. Tr. 63. The ALJ supported his decision for the reason that Mr. K.'s observation of Plaintiff's symptoms is inconsistent with Plaintiff's activities and medical evidence. Specifically, (1) Plaintiff could drive a car despite Mr. K.'s indication that Plaintiff had a problem with her hand tremor, (2) Plaintiff attended Bible study and a college class despite Mr. K.'s indication that Plaintiff had concentration problems, and (3) Exhibit 15F reflected no concentration or other significant mental health symptoms. The ALJ specifically noted that Plaintiff "watches infant grandson 3 days per week," and Exhibit 15F/11 shows her concentration is normal. *Id.* The ALJ also found that Mr. K.'s report that he had known Plaintiff for greater than one year "is not clear" and "it seems he should know exactly how long he has been married to [Plaintiff]." *Id.*

The ALJ's reasoning for rejecting Mr. K.'s testimony based on Plaintiff's activities of daily life assumes that Plaintiff should not be able to drive a car because of the tremor. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Smolen*, 80 F.3d at 1287 n. 7. Mr. K. noted that Plaintiff's "[problems] vary from day to day [and are] becoming much worse at times." Tr. 299. Plaintiff "misses scheduled times due to chronic pain." Tr. 296. She does cleaning and laundry "but [the amount is] very minimal" Tr. 294. Her "[s]mall projects can last all day." *Id.* She needs "prompts/reminders/help" when doing things. *Id.* Mr. K. helps her in all areas. Tr. 293. The level of Plaintiff's daily activities is consistent with her claimed limitations. She should not be penalized for attempting to lead a normal life in the face of her limitations. *Garrison*, 759 F.3d at 1016. The ALJ did not provide germane reasons to reject Mr. K's testimony about Plaintiff's daily activities.

---

[4] For the same reason stated in footnote 1, this Opinion and Order uses only the first name and the initial of the last name of the lay witness.

Furthermore, "a lack of support from the overall medical evidence is … not a proper basis for disregarding [a lay witness]'s observations." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citation omitted). "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Id.* The ALJ's rejection of Mr. K.'s statement based on the rational that his observation is inconsistent with the medical record is not a germane reason to give little weight to those observations. *Id.* ("A lack of support from medical records is not a germane reason to give 'little weight' to those observations.").

The ALJ noted that Mr. K should know exactly how long he has been married to Plaintiff but did not explain why this is a germane reason to reject Mr. K's testimony. The Court is unable to determine what the ALJ tried to indicate with this note.

The Court therefore finds that the ALJ erred in rejecting the lay witness testimony from Plaintiff's husband.

**III. Severe Impairment Finding at Step Two**

An impairment is not severe for purposes of a social security disability benefits case if it amounts to only a slight abnormality that would not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. In other words, if the impairment would have no more than a minimal effect on a claimant's ability to work, it does not satisfy the requirements of step two of the sequential analysis. *Id.*

Plaintiff challenges the ALJ's omission of tremors as a severe impairment in step two because the omission is "largely [based] on [the ALJ's] disbelief of [Plaintiff's] testimony and his finding that her tremors and grip strength had not worsened." Pl.'s Br. 15 (ECF No. 21). The ALJ stated three reasons to support his finding that Plaintiff's tremor appears to be mild.

"[Plaintiff] reported having tremors … for the last 27 years, indicating she was able to work with it." Tr. 60.  Plaintiff's handwriting in January 2014 is legible at Exhibit 5E and "there is very little change in her handwriting at Exhibit 13E, dated December 2016." Tr. 61.  Plaintiff reported that "she was crocheting nightly, which requires good use of the hands." *Id.*

The medical records support that Plaintiff has a long history of bilateral tremor, with the left hand having worse symptoms than the right hand. Tr. 338-39, 344-45, 430, 929.  Her grips are weak. Tr. 338-39, 931.  The records also document Plaintiff's report of worsening tremors beginning January 2017[5]. Tr. 929.  Plaintiff felt that "her left arm is becoming progressively weaker and her right arm becomes 'exhausted' as she has to do everything with the right arm." *Id.*  "[S]he drops things with her right hand from fatigue.  Sometimes it takes 2 hands to lift simple things such as a bottle of cooking oil." *Id.*  Two months later in March 2017, Plaintiff reported that "her tremor has increased slightly, and she has decreased strength in her right hand" Tr. 922.

Plaintiff's handwriting in December 2016 appears shakier than her handwriting in January 2014. *Compare* Tr. 321-23 *with* Tr. 278-85.  The ALJ found that "there is very little change." Tr. 61.  However, there is no evidence how long Plaintiff took to write each of the handwriting exhibits.  As Plaintiff points out, "[s]he could have taken much more time to do the second one." Pl.'s Br. 17 (ECF No. 21).  The ALJ does not offer any specific, clear and convincing evidence from the record to support his discounting of Plaintiff's subjective complaints about the tremors.

---

[5] New evidence submitted to the Appeals Council also document decreased coordination due to tremor and progressive decline in ability to perform ADLs and IADLs. Tr. 18.  The new evidence was not before the ALJ prior to his decision.

The Commissioner argues that since the ALJ found in Plaintiff's favor at step two, the omission of tremors from step two is inconsequential as long as the ALJ considers the limitations of tremors throughout the remainder of the analysis. Def.'s Br. 8 (ECF No. 24) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (where "step two was decided in [the claimant's] favor … [,] [h]e could not possibly have been prejudiced.")).

"Step two is merely a threshold determination meant to screen out weak claims.  It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49 (internal citation omitted).  Because an ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, even those that are not severe, "[t]he RFC therefore *should* be exactly the same regardless of whether certain impairments are considered severe or not." *Id.* at 1049 (emphasis in original).

Therefore, the ALJ's error of omitting tremors as a severe impairment at step two is harmless. *Id.*  Because the ALJ must consider the limitations imposed by Plaintiff's tremor, the issue is whether the ALJ properly took into account Plaintiff's tremors when determining the RFC.

An ALJ has the responsibility to determine a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a).  The RFC reflects the most an individual can do. 20 C.F.R. § 416.945.  Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157,

1163–65 (9th Cir. 2001). The Court must uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

As found above, the ALJ erred in discrediting Plaintiff's pain complaints about her tremors without the support of substantial evidence. The ALJ then formulated the RFC without incorporating any limitations to the use of hands. Tr. 58. The Court therefore finds that the ALJ's failure to incorporate the limitations caused by tremor is not harmless.

## IV. New Evidence Rejected by The Appeals Council

"The Appeals Council will only consider additional evidence … if [the claimant] show[s] good cause for … submitting the evidence." 20 C.F.R. § 404.970(b). Specifically, "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

Plaintiff submitted new evidence to the Appeals Council with her appeal. Tr. 331, 16-49. The Appeals Council rejected the new evidence based on the following reasons:

> You submitted records from Asante Three Rivers Medical Center for the period from October 21, 2016 to November 22, 2016 (17 pages), and December 21, 2016 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

> You submitted records from Shaun Rajah, M.D. for the period from February 19, 2018 to February 23, 2018 (10 pages), and from March 9, 2018 to March 13, 2018 (2 pages). The Administrative Law Judge decided your case through June 22, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 22, 2017.

Tr. 2.

Plaintiff asserts that the Appeals Council erred in reviewing but failing to consider the new evidence. Pl.'s Br. 18 (ECF No. 21). Plaintiff challenges the Appeals Council's refusal to include the new evidence. *Id.* at 18-21.

"The Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner." *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (citing 42 U.S.C. § 405(g)). "When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner." *Taylor v. Comm'r*, 659 F.3d 1228, 1231 (9th Cir. 2011) (citation omitted). "Thus, [district courts] have no jurisdiction to review the Appeals Council's decision denying [a claimant's] request for review." *Id.*

However, when the court finds that the Appeals Council improperly rejected the evidence, the Ninth Circuit has held that the court could consider the rejected evidence to determine whether the ALJ's decision was supported by substantial evidence and was free of legal error. *Id.* (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). "Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." *Id.* at 1233.

Like *Taylor*, Plaintiff asks the Court to review the new evidence, not the Appeals Council's decision rejecting the new evidence. Pl.'s Br. 20 (ECF No. 21). Therefore, the Court could consider the rejected evidence. Taylor, 659 F.3d at 1231. The Court first determines whether the Appeals Council was required to consider the new evidence. *See id.* If the answer is affirmative, the Court then determines "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Id.* at 1232.

The Appeals Council rejected the records from Shaun Rajah, M.D., because they do "not relate to the period at issue." Tr. 2. The records from Dr. Rajah are dated after the ALJ issued his decision. Tr. 30-44 (Dr. Rajah's records between February 19, 2018), Tr. 45-46 (Dr. Rajah's record on March 13, 2018). The issue therefore is whether the post-ALJ-decision records from Dr. Rajah "relate to the period at issue."

The records show that Plaintiff was receiving care from FNP Fogg for symptoms including her low back pain and tremors. Tr. 916-37. Fogg referred Plaintiff to Dr. Rajah for "Pain (Shooting pain in legs, hurts to sit) and Tremors (Can't hold things anymore)." Tr. 36. "Upon careful history [*sic*] and examination[,]" Dr. Rajah notes that "it is unclear whether [Plaintiff] has Parkinson's or essential tremor at this point. She has tremor that worsens with action which points towards essential tremor. However[,] she has rigidity, shuffling gait and decreased arm swing." Tr. 43. Dr. Rajah later stated his diagnostic opinion in two letters that Plaintiff likely has Parkinson's Disease and she has tremor that worsens with action. Tr. 45-46.

Dr. Rajah's retroactive diagnosis of Plaintiff's likelihood of having Parkinson's Disease was the result of a referral to examine and treat her tremors. The ultimate diagnosis of both Parkinson's Disease (likely) and tremors based on the same tremor symptoms suggests that Plaintiff's Parkinson's Disease relates to her tremor, a diagnosis and an impairment prior to the ALJ's decision.

The Commissioner argues that a diagnosis alone does not provide a claimant's functional limitations. Def.'s Br. 10 (ECF No. 24) (citing *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (the "mere existence of an impairment is insufficient proof of a disability") (additional citation omitted)). Rather, a claimant carries "the burden of proving that an impairment is disabling." *Id.* at 11 (citation omitted).

Contrary to the Commissioner's assertion, Plaintiff's retroactive diagnosis of Parkinson's Disease is not "alone" and is supported by other evidence in the records. Plaintiff has had a long history of tremor symptoms. Tr. 60, 929. Plaintiff reported increased symptoms of tremor. Tr. 922, 929. Plaintiff cites an Internet source and notes that "Parkinson's Disease is progressive, and can cause tremors, pain and problems with coordination." Pl.'s Br. 20 (ECF No. 21) (citing https://www.webmd.com/parkinsons-disease/guide/parkinsons-disease-progression#1). Plaintiff's documented history of tremors in the medical records does not conflict with the prognosis of Parkinson's Disease. Her handwriting became shakier. *Compare* Tr. 321-23 *with* Tr. 278-85. She felt that "her left arm is becoming progressively weaker." Tr. 929. She reported decreased strength in her right hand as tremor increased. Tr. 922. In light of the record as a whole, the Court finds that Plaintiff's retroactive diagnosis of Parkinson's Disease "relates to the period at issue." 20 C.F.R. § 404.970(a)(5); *see Taylor*, 659 F.3d at 1232. Thus, the Court finds that Appeals Council improperly rejected the new evidence of Parkinson's Disease.

The Appeals Council rejected the records from ASANTE Rivers Medical Center from late 2016 on the grounds that these records do not show a reasonable probability of changing the outcome of the ALJ's decision. Tr. 2. These records are occupational therapy notes by Occupational Therapist Inga Craig. Tr. 16-34. Craig found that Plaintiff was occupationally disabled. Tr. 17. She noted that Plaintiff's pain level somewhat limited her ability to participate in therapy. *Id.* Craig assessed a need for skilled intervention due to Plaintiff's increasing difficulty with ADLs and IADLs due to chronic pain and progression of BUE tremors. Tr. 18.

On October 28, 2016, Craig noted that Plaintiff had increased pain in her left arm since the last therapy session. Tr. 20. Plaintiff had difficulty using her left arm and hand. *Id.* Craig administered a test and noted that Plaintiff was not able to tolerate full elbow extension and no

more than one minute of gentle weight-bearing without pain.  *Id.*  On November 9, 2016, Plaintiff reported that avoiding the use of her left arm made it feel better. Tr. 24.  On November 22, 2016, Plaintiff had made some progress with reported pain level and ability to tolerate the Left Upper Exertion (LUE) home program. Tr. 32.  Plaintiff made little to no progress in regard to strength. *Id.*

The occupational therapy records include much more detailed information about Plaintiff's tremor than the medical records that were available to the ALJ before his decision. These therapy records specifically document the intensity of pain caused by tremor, decreased handwriting legibility, and functional limitations to Plaintiff's upper exertion.  The Court finds that these records present a reasonable probability of changing the outcome of the ALJ's decision.

Therefore, the Court finds that the Appeals Council improperly rejected the new evidence on the grounds stated in the Appeals Council's Notice of Appeals Council Action. Tr. 2.

The Court finds that the ALJ's decision was not supported by substantial evidence and contains legal errors in rejecting Plaintiff's subjective complaints, rejecting lay witness testimony, and failing to incorporate the limitations to Plaintiff's use of hands.  Further, the Appeals Council improperly rejected the supplemental evidence.  When the additional evidence is considered, the Court finds the ALJ's decision was not supported by substantial evidence in light of the record as a whole.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility

of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, as to the first prong of the credit-as-true analysis, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective testimony and her husband's lay witness testimony. As to the second prong, the new evidence Plaintiff submitted to the Appeals Council was not available to the ALJ for his consideration. Plaintiff asks the Court to remand with instructions that the ALJ consider the new evidence of Plaintiff's diagnosis of Parkinson's Disease and severe weak grip strength. Pl.'s Br. 20 (ECF No. 21). However, except for the harmless error that the ALJ failed to find tremor as a severe impairment at step two, the Court has found that the ALJ provided legally insufficient reasons to reject the evidence before him. The new evidence

supports the Court's conclusion.  There remain no outstanding issues that must be resolved. Therefore, the second prong of the credit-as-true analysis is met.  As to the third prong, it is clear from the record that had the ALJ fully credited Plaintiff's and her husband's subjective testimony and considered the new evidence of Plaintiff's diagnosis of Parkinson's Disease and her severe weak grip strength records, the Commissioner would have been required to find Plaintiff disabled. Accordingly, the third prong is met.

For the reasons set forth above, the Court remands this case for the immediate calculation and award of benefits.

DATED this 20th day of June 2019.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge